**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NILS MÖLDER, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| UBIQUITI INC., ROBERT J. PERA, and KEVIN RADIGAN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Nils Mölder ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ubiquiti Inc. ("Ubiquiti" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ubiquiti; and (c) review of other publicly available information concerning Ubiquiti.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ubiquiti securities between January 11, 2021 and March 30, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Ubiquiti develops and markets equipment and technology platforms for high-capacity Internet access, unified information technology, and consumer electronics.

3.      On March 30, 2021, after the market closed, *Krebs on Security* published an article entitled "Whistleblower: Ubiquiti Breach 'Catastrophic'" stating that the Company had downplayed a data breach from January 2021 and that the "third-party cloud provider claim was a fabrication."  According to the article, the attacker(s) had accessed "privileged credentials that were previously stored in the LastPass account of a Ubiquiti IT employee, and gained root administrator access to all Ubiquiti AWS [Amazon Web Services] accounts, including all S3 data buckets, all application logs, all databases, all user database credentials, and secrets required to forge single sign-on (SSO) cookies." As a result, the article noted that the Company should have

immediately invalidated customers' credentials and forced a reset, rather than asking customers to change their passwords when they next log on."

4.    On this news, the Company's stock price fell $50.70, or 14.5%, to close at $298.30 per share on March 31, 2021, on unusually heavy trading volume.

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants, in their statements concerning the data breach, failed to speak fully and truthfully because they failed to disclose to investors: (1) that the Company had downplayed the data breach in January 2021; (2) that attackers had obtained administrative access to Ubiquiti's servers and obtained access to, among other things, all databases, all user database credentials, and secrets required to forge single sign-on (SSO) cookies; (3) that, as a result, intruders already had credentials needed to remotely access Ubiquiti's customers' systems; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Nils Mölder, as set forth in the accompanying certification, incorporated by reference herein, purchased Ubiquiti securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Ubiquiti is incorporated under the laws of Delaware with its principal executive offices located in New York, New York. Ubiquiti's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "UI."

13.    Defendant Robert J. Pera ("Pera") was the Chief Executive Officer ("CEO") of Ubiquiti at all relevant times.

14.    Defendant Kevin Radigan ("Radigan") was the Chief Accounting and Finance Officer of Ubiquiti at all relevant times.

15.    Defendants Pera and Radigan (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of

the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Ubiquiti develops and markets equipment and technology platforms for high-capacity Internet access, unified information technology, and consumer electronics.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on January 11, 2021. On that day, the Company issued a public notice stating that it had become aware of "unauthorized access to certain of our information technology systems hosted by a third party cloud provider." The notice, sent in an email to customers and later republished by media outlets, stated:[1]

Dear Customer,

We recently became aware of unauthorized access to certain of our information technology systems hosted by a third party cloud provider. We have no indication that there has been unauthorized activity with respect to any user's account.

***We are not currently aware of evidence of access to any databases that host user data, but we cannot be certain that user data has not been exposed.*** This data may

---

[1] All emphasis in bold and italics hereinafter is added.

include your name, email address, and the one-way encrypted password to your account (in technical terms, the passwords are hashed and salted). The data may include your address and phone number if you have provided that to us.

As a precaution we encourage you to change your password. We recommend that you also change your password on any website where you use the same user ID or password. Finally, we recommend that you enable two-factor authentication on your Ubiquiti accounts if you have not already done so.

We apologize for, and deeply regret, any inconvenience this may cause you. We take the security of your information very seriously and appreciate your continued trust.

18.    On February 5, 2021, Ubiquiti filed its quarterly report on Form 10-Q for the period ended December 31, 2020. Regarding data security and recent data breaches, the Company stated, in relevant part:

We have experienced cyber-attacks in the past, and may experience cyber-attacks in the future. As a result, unauthorized parties have obtained, and may in the future obtain, access to our systems and data and may have obtained, and may in the future obtain, our users' or customers' data. Our security measures may also be breached due to employee error, malfeasance, or otherwise. Third parties may also attempt to induce employees, users, or customers to disclose sensitive information in order to gain access to our data or our users' or customers' data. Any such breach or unauthorized access could result in significant legal and financial exposure, damage to our reputation, and a loss of confidence in the security of our products and services. Because the techniques used to obtain unauthorized access, disable or degrade service, or sabotage systems change frequently, and often are not recognized until launched against a target, we may be unable to anticipate these techniques or to implement adequate preventative measures.

For example, ***in January 2021, we became aware that certain of our information technology systems hosted by a third party cloud provider were improperly accessed and certain of our source code and the credentials used to access the information technology systems themselves had been compromised.*** We received a threat to publicly release these materials unless we made a payment, which we have not done. As a result, it is possible that the source code and other information could be publicly disclosed or made available to our competitors. Due to the nature of the source code and the other information that we believe was improperly accessed, we at this time do not believe that any public disclosure will have a material adverse effect on our business or operations, but it is impossible to gauge the precise impact of any such disclosure. We have taken, and will continue to take, steps to remediate access controls to our information technology systems.

19.     The above statements identified in ¶¶ 17-18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants, in their statements concerning the data breach, failed to speak fully and truthfully because they failed to disclose to investors: (1) that the Company had downplayed the data breach in January 2021; (2) that attackers had obtained administrative access to Ubiquiti's servers and obtained access to, among other things, all databases, all user database credentials, and secrets required to forge single sign-on (SSO) cookies; (3) that, as a result, intruders already had credentials needed to remotely access Ubiquiti's customers' systems; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

20.     On March 30, 2021, after the market closed, *Krebs on Security* published an article entitled "Whistleblower: Ubiquiti Breach 'Catastrophic'" stating that the Company had downplayed the data breach and that the "third-party cloud provider claim was a fabrication." The article cited a security professional at Ubiquiti (nicknamed "Adam") who had responded to the two-month breach beginning in December 2020, after he had raised concerns with the Company's whistleblower hotline and with European data protection authorities. According to Adam, the Company had been aware since December 2020 that attackers had "administrative access to all Ubiquiti AWS accounts, including . . . all user database credentials, and secrets required to forge single sign-on (SSO) cookies." The article stated:

> According to Adam, the hackers obtained full read/write access to Ubiquiti databases at Amazon Web Services (AWS), which was the alleged "third party" involved in the breach. Ubiquiti's breach disclosure, he wrote, was "downplayed and purposefully written to imply that a 3rd party cloud vendor was at risk and that Ubiquiti was merely a casualty of that, instead of the target of the attack."

In its Jan. 11 public notice, Ubiquiti said it became aware of "unauthorized access to certain of our information technology systems hosted by a third party cloud provider," although it declined to name the third party.

[image omitted]

In reality, Adam said, the attackers had gained administrative access to Ubiquiti's servers at Amazon's cloud service, which secures the underlying server hardware and software but requires the cloud tenant (client) to secure access to any data stored there.

"They were able to get cryptographic secrets for single sign-on cookies and remote access, full source code control contents, and signing keys exfiltration," Adam said.

Adam says *the attacker(s) had access to privileged credentials that were previously stored in the LastPass account of a Ubiquiti IT employee, and gained root administrator access to all Ubiquiti AWS accounts, including all S3 data buckets, all application logs, all databases, all user database credentials, and secrets required to forge single sign-on (SSO) cookies.*

Such access could have allowed the intruders to remotely authenticate to countless Ubiquiti cloud-based devices around the world. According to its website, Ubiquiti has shipped more than 85 million devices that play a key role in networking infrastructure in over 200 countries and territories worldwide.

Adam says *Ubiquiti's security team picked up signals in late December 2020 that someone with administrative access had set up several Linux virtual machines that weren't accounted for.*

*Then they found a backdoor that an intruder had left behind in the system.*

When security engineers removed the backdoor account in the first week of January, the intruders responded by sending a message saying they wanted 50 bitcoin (~$2.8 million USD) in exchange for a promise to remain quiet about the breach. The attackers also provided proof they'd stolen Ubiquiti's source code, and pledged to disclose the location of another backdoor if their ransom demand was met.

Ubiquiti did not engage with the hackers, Adam said, and ultimately the incident response team found the second backdoor the extortionists had left in the system. The company would spend the next few days furiously rotating credentials for all employees, before Ubiquiti started alerting customers about the need to reset their passwords.

But he maintains that instead of asking customers to change their passwords when they next log on — as the company did on Jan. 11 — Ubiquiti should have immediately invalidated all of its customer's credentials and forced a reset on all

accounts, mainly because the intruders already had credentials needed to remotely access customer IoT systems.

"Ubiquiti had negligent logging (no access logging on databases) so it was unable to prove or disprove what they accessed, but the attacker targeted the credentials to the databases, and created Linux instances with networking connectivity to said databases," Adam wrote in his letter. "Legal overrode the repeated requests to force rotation of all customer credentials, and to revert any device access permission changes within the relevant period."

21.     On this news, the Company's stock price fell $50.70, or 14.5%, to close at $298.30

per share on March 31, 2021, on unusually heavy trading volume.

22.     On April 4, 2021, *Krebs on Security* published a follow-up article to note that

Ubiquiti's response to "confirms and reinforces th[e] claims" from the March 30, 2021 article.

Specifically, it stated:

Ubiquiti finally responded on Mar. 31, in a post signed "Team UI" on the company's community forum online.

"Nothing has changed with respect to our analysis of customer data and the security of our products since our notification on January 11. In response to this incident, we leveraged external incident response experts to conduct a thorough investigation to ensure the attacker was locked out of our systems."

"These experts identified no evidence that customer information was accessed, or even targeted. The attacker, who unsuccessfully attempted to extort the company by threatening to release stolen source code and specific IT credentials, never claimed to have accessed any customer information. This, along with other evidence, is why we believe that customer data was not the target of, or otherwise accessed in connection with, the incident."

*          *          *

Ubiquiti's statement largely confirmed the reporting here by not disputing any of the facts raised in the piece. And while it may seem that Ubiquiti is quibbling over whether data was in fact stolen, Adam said Ubiquiti can say there is no evidence that customer information was accessed because Ubiquiti failed to keep logs of who was accessing its databases.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

or otherwise acquired Ubiquiti securities between January 11, 2021 and March 30, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ubiquiti's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Ubiquiti shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Ubiquiti or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ubiquiti; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

29.     The market for Ubiquiti's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ubiquiti's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ubiquiti's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ubiquiti, and have been damaged thereby.

30.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ubiquiti's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or

misleading because they failed to disclose material adverse information and/or misrepresented the truth about Ubiquiti's business, operations, and prospects as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ubiquiti's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

32.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33.     During the Class Period, Plaintiff and the Class purchased Ubiquiti's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

11

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ubiquiti, their control over, and/or receipt and/or modification of Ubiquiti's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ubiquiti, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

35.     The market for Ubiquiti's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ubiquiti's securities traded at artificially inflated prices during the Class Period.  On March 26, 2021, the Company's share price closed at a Class Period high of $389.88 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ubiquiti's securities and market information relating to Ubiquiti, and have been damaged thereby.

36.     During the Class Period, the artificial inflation of Ubiquiti's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ubiquiti's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ubiquiti and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially

inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.     At all relevant times, the market for Ubiquiti's securities was an efficient market for the following reasons, among others:

(a)     Ubiquiti shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Ubiquiti filed periodic public reports with the SEC and/or the NYSE;

(c)     Ubiquiti regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Ubiquiti was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for Ubiquiti's securities promptly digested current information regarding Ubiquiti from all publicly available sources and reflected such information in Ubiquiti's share price. Under these circumstances, all purchasers of Ubiquiti's securities during the Class Period suffered similar injury through their purchase of Ubiquiti's securities at artificially inflated prices and a presumption of reliance applies.

39.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ubiquiti who knew that the statement was false when made.

## **FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

41.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ubiquiti's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ubiquiti's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ubiquiti's financial well-being and prospects, as specified herein.

45.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Ubiquiti's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ubiquiti and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

16

for the purpose and effect of concealing Ubiquiti's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ubiquiti's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ubiquiti's securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ubiquiti was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ubiquiti securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     Individual Defendants acted as controlling persons of Ubiquiti within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, Ubiquiti and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 19, 2021

By: */s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Nils Mölder*

**SWORN CERTIFICATION OF PLAINTIFF**

**UBIQUITI INC. (UI) SECURITIES LITIGATION**

I, Nils Mölder, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
        Plaintiff motion on my behalf.

2.      I did not purchase the Ubiquiti Inc. securities that are the subject of this action at
        the direction of plaintiff's counsel or in order to participate in any private action
        arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify
        at deposition and trial, if necessary.

4.      My transactions in Ubiquiti Inc. securities during the Class Period set forth in the
        Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a
        class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to
        receive my pro rata share of any recovery or as ordered or approved by the court,
        including the award to a representative plaintiff of reasonable costs and expenses
        (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

4/15/2021
_____                         DocuSigned by:
        Date                            _____
                                        1C2D4D49D4AE4CF...
                                        Nils Mölder

**Nils Mölder's Transactions in Ubiquiti Inc. (UI)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/29/2021 | Bought | 14.44 | $380.9100 |